**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOSEPH A. LINGENFELTER, ) | |
| ) | CASE NO. 1:13-cv-00057 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL, ) | |
| SECURITY, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Joseph A. Lingenfelter ("Plaintiff") challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

In September of 2008, Plaintiff filed applications for POD, DIB, and SSI alleging a

disability onset date of September 6, 2008. His application was denied both initially and upon reconsideration. Plaintiff timely requested an administrative hearing. (Tr. 20.)

On February 8, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 20.) On April 14, 2011, the ALJ found Plaintiff was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 27-28.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age forty-five (45) on his alleged onset date, Plaintiff is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Plaintiff has a high school education through special education classes and past relevant work as security guard, fast food worker, laborer, and spot welder. (Tr. 26-27.)

### *Hearing Testimony*

At the hearing, Plaintiff testified in relevant part as follows:

- He has difficulty climbing stairs as it causes shortness of breath and his knee "give[s] out." He needs to take breaks on the way up. (Tr. 41.)

- He has a driver's license without any restrictions, but only drives twenty to thirty minutes at a time due to drowsiness. (Tr. 41-42.)

- He lives with his fiancée and her three minor children. (Tr. 42.)

- He graduated from high school but had poor grades. He has no vocational training. He reads at the third-grade level. (Tr. 42-43.) He was in special education classes for all subjects. (Tr. 63.)

- He can perform addition and subtraction, and can calculate the correct change he should receive after a purchase. (Tr. 44-45.)

2

- His fiancée is epileptic.  She receives SSI and food stamps.  (Tr. 45.)

- He had total knee replacement surgery scheduled later in the month.  (Tr. 47-48.)

- He uses a CPAP mask to treat his sleep apnea.  (Tr. 48.)  He first began treatment for sleep apnea when he started falling asleep at work.  (Tr. 49.)  He believes it has become worse since he began treatment.  (Tr. 49-50.)

- His medications cause no side effects.  (Tr. 49.)

- His knee pain began in 1986 resulting from a sports injury.  He experiences pain daily, which does not fluctuate.  He rated his pain a nine out of ten, with ten being the worst.  (Tr. 50-51.)

- He can lift about ten pounds.  (Tr. 51.)

- He has trouble sitting due to pain in his lower back.  He can sit for up to thirty minutes before needing to change positions.  He can sit again after about ten to fifteen minutes.  (Tr. 51-52.)

- He can stand/walk for five to ten minutes at a time before needing to sit.  He can stand again after about ten to fifteen minutes.  (Tr. 52.)  He uses a cane that was prescribed by a doctor a year earlier.  (Tr. 64.)

- During a typical day, he goes to bed around ten p.m., but wakes up every two hours.  (Tr. 52-53.)  He wakes up at 6:30 a.m. and helps the children get ready for school.  (Tr. 53.)  He watches television, but dozes off.  (Tr. 54.)  His fiancée prepares lunch.  After lunch, he plays games with his daughter and watches more television, and falls asleep again.  (Tr. 54-55.)

- After dinner, he cleans up the table and washes the dishes, but needs a break in the process.  (Tr. 55.)

- After dinner, the family watches television until bedtime.  (Tr. 55.)

- He helps prepare simple meals involving the microwave or boiling hot dogs.  (Tr. 56.)

- He goes grocery shopping with his fiancée and a friend who drives.  (Tr. 56.)

- He does laundry once a week.  (Tr. 56.)

- He does not perform any yard work or vacuuming.  (Tr. 56-57.)

3

- He does not go out at all, but has friends he seldom sees, save for one who comes over every other day.  (Tr. 57.)

The ALJ posed the following hypothetical questions to the VE:

[P]lease assume an individual the same age, education, and work experience as the claimant.  This individual would be able to perform light work which is defined as lift up to 20 pounds occasionally, lift/carry up to 10 pounds frequently, stand/walk for about six hours and sit for up to six hours in an eight [hour] work day with normal breaks.  This hypothetical individual would be further limited in that they could never climb ladders, ropes or scaffolds.  They could frequently balance.  They could occasionally stoop.  They could never kneel.  They could occasionally crouch, and they could never crawl.  This individual would be further limited in that they would have to avoid all use of moving machinery.  They would have to avoid all exposure to unprotected heights.  In addition, the work would be limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and routine work place changes.

(Tr. 67-68.)  The VE testified that such an individual could not perform Plaintiff's past relevant work.  (Tr. 69.)  However, the VE identified the following jobs that such an individual could perform: visual inspector, mail clerk, and cleaner/housekeeper.  (Tr. 69.)

In a second hypothetical, the ALJ asked the VE to assume the same limitations above, except that the individual would be off task twenty percent of the day.  (Tr. 70.)  The VE stated that such a person would be unable to sustain full-time work.  *Id*.

In a third hypothetical, the ALJ asked the VE to assume the same limitations as in the first, but with the added limitation that the hypothetical individual would need a cane for walking and standing.  (Tr. 70.)  The VE stated that such a person also would be unable to sustain full-time work.  (Tr. 71.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the

time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Plaintiff was insured on his alleged disability onset date, September 6, 2008, and remained insured through the date of the ALJ's decision. (Tr. 22.) Therefore, in order to be entitled to POD and DIB, Plaintiff must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

## IV. Summary of Commissioner's Decision

The ALJ found Plaintiff established medically determinable, severe impairments, due to chronic obstructive pulmonary disease (COPD), sleep apnea, osteoarthritis of the left knee, back pain, and borderline intellectual functioning. (Tr. 22.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* Plaintiff was found incapable of performing his past relevant work activities, but was determined to have a Residual Functional Capacity ("RFC") for *a limited range* of light work. (Tr. 24, 26.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Plaintiff was not disabled. (Tr. 27-28.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is

not mentioned, the Court cannot determine if it was discounted or merely overlooked.");

*McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL

2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9,

2010).

### VI. Analysis

Plaintiff claims the ALJ erred by: (1) not having valid reasons for finding that he did not

meet or equal Listing 12.05(B) or 12.05(C); (2) not performing a proper credibility analysis; and,

(3) failing to meet the Commissioner's burden at Step Five. (ECF No. 16.)

*Listing 12.05*

In his first assignment of error, Plaintiff argues that the ALJ erred by finding that he did

not meet or equal Listing 12.05(B) or 12.05(C). (ECF No. 16 at 13-16.)

At step three, the burden of proof for establishing that an impairment meets or equals the

requirements of a listing rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.

2001). To meet a listed impairment, a claimant must satisfy **all** of the criteria in the listing. *See

Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) (*citing Hale v. Sec'y of

Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).

Listing 12.05, 20 C.F.R. Pt. 404, Subpt. P, App. 1, states, in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.
>
> ***
> B. A valid verbal, performance, or full scale IQ of 59 or less;

8

OR

  C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function;

*Id.*[2] Under each mental retardation listing, including both Listings 12.05(B)&(C), a claimant must establish that his impairment: (1) satisfies the "diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(A) (emphasis added). If a claimant does not show that his impairment satisfies the diagnostic description for mental retardation, then he cannot be found disabled. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *accord Cox v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 143719 (E.D. Tenn. Sept. 7, 2012); *Green v. Astrue*, 2012 U.S. Dist. LEXIS 92685 at *8 (S.D. Ohio July 5, 2012). "Plaintiff bears the burden of showing he had 'deficits in adaptive functioning' before age 22." *Cox v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 143719 (E.D. Tenn. Sept. 7, 2012) (*citing Foster*, 279 F.3d at 354.)

  **1. Subaverage General Intellectual Functioning with Deficits in Adaptive Functioning Manifested Before Age 22**

Based on the above, to satisfy Listing 12.05(B), a claimant must demonstrate: (1) valid verbal, performance, or full scale IQ of 59 or less; *and*, (2) evidence of deficits in adaptive functioning initially manifested before age 22. Similarly, to satisfy Listing 12.05(C), a claimant must demonstrate: (1) valid verbal, performance, or full scale IQ of 60 through 70; (2) evidence

---

[2] Since the time of the ALJ's decision, the term "mental retardation" has been replaced with "intellectual disability." This Court will continue to use the terminology in effect at the time of the decision for the sake of consistency. Notably, the underlying requirements of the listings have not changed.

9

of deficits in adaptive functioning initially manifested before age 22; *and*, (3) an additional and significant work-related limitation or function. *See, e.g., Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).

The Commissioner asserts that the ALJ's decision should be affirmed, because Plaintiff has not demonstrated the requisite deficits in adaptive functioning. (ECF No. 17 at 8-13.) The Court declines to address this issue, as it constitutes a *post hoc* rationale. The ALJ's Step Three analysis simply did *not* address whether the evidence provided by Plaintiff was sufficient to satisfy the requirement of deficits in adaptive functioning initially manifested before age 22. Though the Commissioner's arguments that Plaintiff did not satisfy the threshold requirement of Listing 12.05 are not entirely unpersuasive, counsel's argument cannot be substituted for the reasons actually offered by the ALJ. As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27–28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument). As explained in another case from within this district with largely similar facts, "to complete the analysis that the Commissioner is suggesting [concerning deficits prior to age 22] at this time – to apply the facts of this case to Listing 12.05(C) for the *first time* and conclude that it does not apply [–] would be a *de novo* review. As such, this Court is constrained

from considering the argument." *Fury v. Comm'r of Soc. Sec.*, 5:11-cv-1660, 2012 WL 4475661 at *3 (N.D. Ohio Sept. 26, 2012) (emphasis in original).

Nonetheless, as the requirements of both Listing 12.05(B) and 12.05(C) are conjunctive, the ALJ's decision is not deficient if substantial evidence supports his finding regarding the remaining criteria.

### 2. Physical or Other Mental Impairment Imposing Significant Limitation(s)

It should be noted that the ALJ did not expressly address whether Plaintiff has a physical or other mental impairment imposing an *additional* and significant work-related limitation or function. To meet Listing 12.05(C), in addition to having a qualifying IQ score, a claimant must also suffer from a separate physical or mental impairment that imposes an additional and significant work-related limitation or function. The question is what constitutes "an additional and significant work-related limitation of function?" The regulations state as follows:

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A.

Here, the ALJ found that, in addition to borderline intellectual functioning, Plaintiff also had "severe" impairments of COPD, sleep apnea, osteoarthritis of the left knee, and back pain. (Tr. 22.) Thus, the ALJ implicitly acknowledges that Plaintiff suffered from four physical impairments in addition to his mental impairment. Based on the Social Security Administrations own regulation cited above, an impairment that is "severe" necessarily constitutes a significant

11

additional limitation. *See, e.g., Breitenstein v. Astrue*, 2011 WL 1235018 (S.D. Ohio Jan. 6, 2011) *report and recommendation adopted sub nom. Breitenstein v. Comm'r of Soc. Sec.*, 2011 WL 1234902 (S.D. Ohio Mar. 30, 2011) (finding that because the ALJ's decision itself acknowledges the existence of additional severe impairments – stuttering and depression/anxiety – these findings satisfy Listing 12.05(C)'s requirement of an "additional and significant work-related limitation of function.") Because the ALJ already found Plaintiff's physical impairments to be "severe" and included numerous physical limitations in the RFC, he necessarily must have also found that Plaintiff had another physical or mental impairment imposing an additional and significant work related function. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).

The Court does recognize, however, that in the Sixth Circuit even a *de minimis* impact on a claimant's ability to perform basic work activities requires a finding that an impairment is "severe."[3] *See Halcomb v. Bowen*, No. 86-5493, 1987 WL 36064, at *3 (6th Cir. May 27, 1987); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 691-92 (6th Cir. 1985). Therefore, assuming *arguendo* that finding an impairment is "severe" at Step Two does not mandate a *per se* finding that such an impairment imposes a significant work related limitation under Listing 12.05(C), the ALJ should, at least, discuss the distinction between the two. Here, the ALJ accommodated what appear to be significant work related limitations by finding that Plaintiff was limited to light work and could "never climb ladders ropes or scaffolds, occasionally climb ramps or stairs ...

---

[3] The regulations describe a severe impairment in the negative: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).

occasional stooping and crouching, never kneeling or crawling, and he must avoid all exposure to unprotected heights, avoid all use of moving machinery ...." (Tr. 24.) The necessary implication is that these limitations logically flow from Plaintiff's physical impairments as opposed to his mental limitations.

### 3. Valid IQ Score

Because the ALJ did not base his decision on either: (1) the lack of evidence concerning significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested before age 22; or (2) the lack of an additional physical or other mental impairment imposing significant work-related limitation or function, the decision necessarily turned upon the ALJ's treatment of Plaintiff's IQ scores.

Plaintiff argues that there were valid IQ scores capable of meeting both Listing 12.05(B) and 12.05(C). (ECF No. 16.) It cannot be disputed that Plaintiff had several low IQ scores as a result of testing in the 1970s when he was in school. Educational records indicate that in a series of IQ exams, Plaintiff scored 70 twice, 76 once, and 80 once. (Tr. 233.) The ALJ readily acknowledges these scores. (Tr. 23.) If the scores of 70 are credited as valid, Plaintiff would barely satisfy the C criteria of Listing 12.05, as the ALJ expressly found that Plaintiff also had additional physical impairments and implicitly found that those impairments imposed additional and significant work-related limitations.

In addition, Plaintiff underwent a more recent consultative psychological evaluation performed by Richard N. Davis, M.A. on May 26, 2009. (Tr. 533-37.) Mr. Davis administered a Wechsler Adult Intelligence Scale IV test, which yielded a full-scale IQ score of 57, indicative of mild mental retardation. (Tr. 535.) Mr. Davis noted that Plaintiff "stayed with tasks and

13

didn't complain about the testing. He was very cooperative." (Tr. 535.) Plaintiff was assessed as having a Global Assessment of Functioning ("GAF") score of 55, indicative of moderate symptoms. (Tr. 536.) Mr. Davis also found Plaintiff was moderately limited in his ability to: (1) get along with others; (2) understand, remember and follow all but the simplest instructions; (3) maintain attention, concentrate and persist at tasks; and, (4) manage money. (Tr. 536-37.) If the score of 57 is credited as valid, Plaintiff would satisfy the B criteria of Listing 12.05. Mr. Davis, nonetheless, found that Plaintiff's functioning "appears to be at the lower end of the Borderline range."[4] (Tr. 535.)

The ALJ discounted all of the aforementioned scores explaining as follows:

> Turning to the requirements in paragraph B, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. At the consultative psychological evaluation performed by Richard N. Davis, M.A. on May 26, 2009, the claimant demonstrated a Full Scale IQ (FSIQ) of 57 on the Wechsler Adult Intelligence Scale-IV (WAIS-IV). However, the claimant has a driver's license, held down a job for years, and Mr. Davis felt that based on his activities of daily living, his overall level of functioning was in the borderline range. The claimant's school records indicate that he was administered Stanford-Binet in November 1971 and demonstrated an IQ of 76 at that time. He was again administered the Stanford-Binet in September 1974 and at that time, he demonstrated an IQ of 70. He was administered the WISC in March 1978 and

---

[4] Pursuant to the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") § V62.9 at 740 (Am. Psychiatric Ass'n 4th ed., test revision 2000), "borderline intellectual functioning" is associated with IQ scores ranging from 71 to 84. Numerous decisions have positively cited DSM-IV on this point. *See, e.g., Roberts v. Apfel*, 222 F.3d 466 at n. 3 (8th Cir. 2000) ("Borderline intellectual functioning is a condition defined as an IQ score within the 71-84 range, while mental retardation is a score of about 70 or below."); *Dray v. Astrue*, 353 Fed. App'x. 147, 151 (10th Cir. 2009); *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001); *Bennett v. Colvin*, 2013 U.S. Dist. LEXIS 115546 (E.D. N.C. Jun. 25, 2013); *Gonzales v. Astrue*, 2012 U.S. Dist. LEXIS 28264 at n. 8 (N.D. Ohio, Mar. 5, 2012); *Renn v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 87024 (S.D. Ohio, Feb. 26, 2010). Although the ALJ could have been more precise in his explanation, implicit in his decision is that Mr. Davis's finding – that Plaintiff functioned at the lower borderline level of functioning – necessarily undermines the validity of scores below 71.

> demonstrated an IQ of 70 at that time (Exhibits IF and 11 F).
>
> In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. As noted above, Mr. Davis concluded that based on the fact that the claimant could obtain a driver's license, was able to hold down a job for a number of years and his activities of daily living, he functions in the borderline range of intellectual functioning (Exhibit 11 F).

(Tr. 23.)

The Sixth Circuit has recently observed that an ALJ "may choose to disregard I.Q. scores that would normally lead to a finding of disability when those scores were undermined by a doctor's full evaluation." *Dragon v. Comm'r of Soc. Sec.*, 470 Fed. App'x 454, 2012 U.S. App. LEXIS 6252 (6th Cir. Mar. 26, 2012); *citing Daniels v. Comm'r of Soc. Sec.*, 70 Fed. App'x 868 (6th Cir. 2003); *see also Shave v. Comm'r of Soc. Sec. Admin.*, 2013 U.S. Dist. LEXIS 50910 (N.D. Ohio Apr. 9, 2013) ("an ALJ may reject IQ scores that are contrary to substantial evidence.") (*citing Courter v. Comm'r of Soc. Sec.*, 479 Fed. App'x 713, 721-22 (6th Cir. 2012)). In *Courter*, the Court specifically noted that the claimant had extensive prior work history, that a doctor found that the claimant's IQ score of 59 underestimated her capabilities, and that "[n]one of the experts diagnosed the claimant with mental retardation." *Id*. The Sixth Circuit found that this evidence "was certainly substantial in that a reasonable mind would accept it as adequate to support a finding that Claimant was not mentally retarded under Section 12.05B, 12.05C." *Id*.

Herein, the ALJ's analysis points to similar substantial evidence that would allow him to reasonably disregard Plaintiff's IQ scores as inaccurate. Mr. Davis, who administered the most recent test, clearly did not believe it was accurate as he noted that Plaintiff was in the lower end of the borderline range rather than mentally retarded. (Tr. 535.) The ALJ also pointed to

15

Plaintiff's ability to obtain a driver's license and hold down a job for a number of years – reasons that were also given by Mr. Davis for declining to fully credit Plaintiff's IQ score. Though Plaintiff argues that Mr. Davis never explicitly invalidated the test, Mr. Davis plainly did not believe the score, which falls in the mild mental retardation range, accurately measured Plaintiff's IQ. As stated above, persons with borderline intellectual functioning have IQs in the range of 71-84. This fact that would be well known to a medical professional such as Mr. Davis. To find otherwise would render Mr. Davis's opinion internally inconsistent. In addition, Plaintiff fails to point to a single diagnosis of mental retardation in the record. For these reasons, substantial evidence supports the ALJ's rejection of the lower IQ scores.[5]

As such, this Court finds no error in the ALJ's finding that Plaintiff did not meet or equal a listed impairment.

*Credibility*

Plaintiff also argues that the ALJ failed to articulate valid reasons for finding that he was not credible. (ECF No. 16 at 17-19.)

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. 20 C.F.R. §§ 404.1529 & 416.929; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability"). It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524,

---

[5] Nonetheless, as this case must be remanded for the reasons stated below, the ALJ should consider clarifying the findings related to the pertinent listings.

16

538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96-7p. Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

If the claims are not substantiated by the medical record, the ALJ must make a credibility determination based on the entire case record. *Id*. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *accord Rogers*

*v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.")  Beyond medical evidence, there are seven factors that the ALJ should consider.[6]

Here, the ALJ expressly found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (Tr. 25.)

With respect to Plaintiff's statements that he is disabled due to sleep apnea which allegedly causes him to fall asleep three to four times daily, the ALJ's decision acknowledged the presence of two sleep studies dated January 21, 2009 and September 9, 2009 that demonstrated Plaintiff had severe obstructive sleep apnea. (Tr. 25.) The ALJ mentions that Plaintiff received treatment and medication in the form of a prescription for Provigil and a CPAP machine with oxygen. *Id*. Unfortunately, the ALJ's decision does not discuss whether the treatment and/or medication was effective in ameliorating Plaintiff's symptoms. *Id*. The Commissioner points to evidence of record that suggests Plaintiff's sleep apnea improved

---

[6] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

dramatically. (ECF No. 17 at 16.) However, the medical record cited by the Commissioner, the first sleep study performed on January 21, 2009, only indicates that improvement occurred *during* the sleep study when BiPAP (bilevel positive airway pressure) was introduced. (Tr. 528-29.) It does not say anything about the Plaintiff's ultimate response to treatment. The Commissioner cites a medical record indicating that Plaintiff's oxygen saturation is 95%, but ignores the physician's assessment in the very same record that Plaintiff still felt sleepy despite treatment and had a long-standing history of cataplexy symptoms suggestive of narcolepsy. (Tr. 531.) Finally, the Commissioner points to a notation that "Provigil helps daytime alertness." (ECF No. 17 at 16, Tr. 578.) The ALJ never sufficiently explained why he found the Plaintiff not credible on this point. While an ALJ need not discuss every factor under SSR 96-7p, the only factors mentioned by the ALJ in his analysis were a prescription for medication and use of a CPAP machine. Glaringly absent from the ALJ's analysis is any discussion as to the *effectiveness* of medication and treatment. A proper credibility analysis should be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight. Here, this Court can only guess as to the reasons the ALJ found Plaintiff less than credible.[7]

As such, the Court finds Plaintiff's second assignment of error to be meritorious.

---

[7] Though the Court need not address the issue, the ALJ's discussion of Plaintiff's COPD is similarly inconclusive. While recognizing Plaintiff suffers from moderate COPD, the ALJ simply references several medications Plaintiff has been prescribed without discussing their effectiveness. (Tr. 25.) While the ALJ emphasizes that Plaintiff's COPD has been described as "stable," such a statement in the disability context does not describe the severity of an impairment. Pursuant to *Dorland's Illustrated Medical Dictionary*, 30th ed., 2003, "stable" simply means "not moving, fixed, firm; resistant to change." In other words, Plaintiff's COPD had neither improved nor worsened.

Although the ALJ undertook a credibility analysis, said analysis was incomplete and the Court cannot trace the path of the ALJ's reasoning.[8]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: September 26, 2013

---

[8] As the Court finds a remand is necessary, Plaintiff's third assignment of error need not be addressed.